1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

ADVANCED SALON VISIONS INC., a
California corporation; MOHSEN
MOKHTARI; ADVANCED SALON
VISIONS, INC. WELFARE BENEFIT
PLAN, an employee benefits plan under
ERISA,

                                    Plaintiffs,

        vs.

LINCOLN BENEFIT LIFE COMPANY, a
Nebraska corporation; PRINCIPAL LIFE
INSURANCE COMPANY, an Iowa
Corporation; CONSECO LIFE
INSURANCE COMPANY, an Indiana
corporation; NICHE MARKETING, INC.,
a California corporation; NICHE PLAN
SPONSORS, INC., a California
corporation; CLARK ANDERSON, an
individual, and DOES 1 through 100,
inclusive,

                                    Defendants.

CASE NO. 08cv2346-LAB (WMc)

**ORDER ON DEFENDANTS'
MOTION TO DISMISS**

        This case is once again before the Court on Defendants' motion to dismiss. The
Court dismissed the Plaintiffs' original complaint on September 29, 2009 but subsequently
granted leave to amend, which Plaintiffs did on January 22, 2010. Expecting the Defendants
to once again move to dismiss, the Court on February 3, 2010 ordered them to file a single,
consolidated motion; Plaintiffs' original complaint was challenging enough for the Court, and

1    the frustration was only exacerbated with three *separate* motions to dismiss that, while

2    similar, didn't align perfectly with one another.  The Defendants filed a consolidated motion

3    to dismiss on February 16, 2010.  It was fully briefed and then taken under submission on

4    March 24, 2010.  There is no need to lay out the facts of this case for a second time.  The

5    parties know what they are, and they know, also, what legal issues the Court must confront.

6    **I.     Legal Standard**

7          The applicable legal standard is familiar to the parties.

8          A rule 12(b)(6) motion to dismiss for failure to state a claim challenges the legal

9    sufficiency of a complaint.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).   In

10   considering such a motion, the Court accepts all allegations of material fact as true and

11   construes them in the light most favorable to the non-moving party.  *Cedars-Sinai Med. Ctr.*

12   *v. Nat'l League of Postmasters of U.S.*, 497 F.3d 972, 975 (9th Cir. 2007).  A complaint's

13   factual allegations needn't be detailed, but they must be sufficient to "raise a right to relief

14   above the speculative level . . . ."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

15   "[S]ome threshold of plausibility must be crossed at the outset" before a case can go

16   forward.  *Id.* at 558 (internal quotations omitted).  A claim has "facial plausibility when the

17   plaintiff pleads factual content that allows the court to draw the reasonable inference that the

18   defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, — U.S. —, 129 S.Ct. 1937,

19   1949 (2009).  "The plausibility standard is not akin to a 'probability requirement,' but it asks

20   for more than a sheer possibility that a defendant has acted unlawfully."  *Id.*

21         While a court must draw all reasonable inferences in the plaintiff's favor, it need not

22   "necessarily assume the truth of legal conclusions merely because they are cast in the form

23   of factual allegations."  *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir.

24   2003) (internal quotations omitted).  In fact, no legal conclusions need to be accepted as

25   true.  *Ashcroft*, 129 S.Ct. at 1949.  A complaint doesn't suffice "if it tenders 'naked

26   assertion[s]' devoid of 'further factual enhancement.'"  *Id.*  That includes a mere formulaic

27   recitation of the elements of a cause of action; this will not do either.  *Bell Atlantic Corp.*, 550

28   U.S. at 555.

**II.    Timeliness of ERISA Claims**

The Court once again confronts first the question whether Plaintiffs' ERISA claims are time-barred.  ERISA's statute of limitations provision, 29 U.S.C. § 1113, allows a plaintiff three years from the date he or she becomes aware of a violation to file suit, and six years from that date if the violation involves fraud or concealment:

> No action may be commenced . . . with respect to a fiduciary's breach of responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earlier of —
>
> (1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission the latest date on which the fiduciary could have cured the breach or violation, or
>
> (2) three years after the earliest date on which the plaintiff had actual knowledge of the breach of violation;
>
> except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.

29 U.S.C. § 1113.

Defendants argue that an audit letter sent to Plaintiffs by the IRS on October 7, 2005 gave them all the notice they needed to file suit, and they're certainly on to something. There's no doubt that the audit letter is meaningful.  But Plaintiffs counter that the audit letter only told them that there *may* be a problem with the plans, and that the statute of limitations actually begins to run when the audit is concluded and the IRS issues a deficiency letter:

> A mere audit letter is not enough for Plaintiffs to realize they have been fraudulently induced into adopting the ERISA plans and funding the ERISA plans with life insurance policies. Although the audit notice stated that the plan did not qualify under IRC 419A(f)(6), Plaintiffs only thought the ERISA plans were going through a routine audit . . . The IRS audits ERISA plans every year, and an audit notice does not necessarily mean that the IRS will prevail in the audit.

(Doc. No. 75, pp.12–13.)

Plaintiffs rely on *Int'l Engine Parts, Inc. v. Feddersen & Co.*, 888 P.2d 1279 (Cal. 1995), but their reliance is somewhat mistaken.  *Feddersen* involved a claim of accountant malpractice based upon an accountant's filing of tax returns, and the court did hold, as Plaintiffs represent, that the statute of limitations begins to run on such a claim when a tax

deficiency is actually assessed. *Id.* at 1280. But the elements of a malpractice claim and a breach of fiduciary duty claim are different in a way that affects the statute of limitations for each. Specifically, a cause of action for malpractice accrues upon "the discovery of the *loss or damage suffered* by the aggrieved party." *Id.* at 1283 (emphasis added). Of course the limitations period doesn't commence upon the receipt of an audit letter, because at that point the aggrieved part hasn't suffered any "loss or damage." Even if the party is *likely to*, the amount is unknown at the time an audit letter is received. The court in *Feddersen* relied on, among other cases, *Budd v. Nixen*, 491 P.2d 433 (Cal. 1971), which explained,

> The mere breach of a professional duty, causing only nominal damages, speculative harm, or the threat of future harm — not yet realized — does not suffice to create a cause of action for negligence. Hence, until the client suffers appreciable harm as a consequence of his attorney's negligence, the client cannot establish a cause of action for malpractice.

*Id.* at 433. The ERISA statute of limitations begins to run, however, when there is "knowledge of the breach" or "discovery of such breach," *not* when, as with malpractice claims, there is an actual, quantifiable injury. *Compare* 29 U.S.C. § 1113 with *Feddersen*, 888 P.2d at 1283 ("Although the statute does not specifically require actual injury to commence its limitations period, cases interpreting the statute have inferred such a requirement in professional malpractice actions.").

A limitations period that commences upon knowledge or discovery of a breach of duty arguably commences *sooner* — intuitively, anyway — than one that commences upon the discovery of loss or damage. But that intuition may be misguided, because to the extent some resulting loss is an element of the breach, the limitations periods may converge. That is the case here. To allege and prove a breach of fiduciary duty for misrepresentations in the ERISA arena, a plaintiff must establish the following: (1) the defendant's status as an ERISA fiduciary; (2) a misrepresentation on the part of the defendant; (3) the materiality of the misrepresentation; and (4) *detrimental reliance* by the plaintiff on the misrepresentation. *In re Computer Sciences Corp. Erisa Litigation*, 635 F.Supp.2d 1128, 1140 (C.D. Cal. 2009) (emphasis added). In other words, Plaintiffs' knowledge or discovery that Defendants' breached their fiduciary duties, if any, entails the knowledge or discovery that Plaintiffs

detrimentally relied on Defendants' alleged misrepresentations about the tax benefits of the plans.  If, as Plaintiffs argue, the audit letter only gave them the impression they were going through a routine audit, they wouldn't have known, upon the receiving the letter, of their own detrimental reliance on Defendants' alleged misrepresentations.  That means they wouldn't have had knowledge of a breach, and, consequently, that the limitations period wouldn't have begun to run.

But the Court has its doubts.  First, being subjected to an audit may, in and of itself, be enough of a detriment to give rise to a breach of fiduciary duty claim.  Second, Plaintiffs say in their amended complaint that the audit letter indicated that "the Plan does not qualify for the IRC 419A(f)(6) exception," and it's hard to imagine how, with language that firm, Plaintiffs could think they were only going through a routine audit.  Third, Plaintiffs had the opportunity with Defendants' first motion to dismiss to argue that the mere receipt of an audit letter isn't enough to commence the limitations period, and they didn't.  (*See* Doc. No. 34, p.6.)  That they're making the argument only now makes the Court slightly suspicious of its sincerity.

Nonetheless, the Court won't dismiss Plaintiffs' ERISA claims, at least for now, on the ground they were brought more than three years after Plaintiffs received the audit letter.  As Plaintiffs note, the audit letter isn't even a part of the record right now — although, as a document referenced in the Plaintiffs' complaint, it could be — and the Court should probably review firsthand any document that's to be the basis for the dismissal — partial or complete — of a plaintiff's case.  In addition, there's something to be said for letting an audit play out before starting the clock on an audited party's ability to bring a lawsuit against the alleged culprit.  *See Feddersen*, 888 P.2d 1279, 1283.  The Court finds, moreover, that such an approach is consistent with ERISA's statute of limitations allowing for three years from the time an aggrieved plaintiff gains "actual knowledge of the breach."  29 U.S.C. § 1113. If necessary, the Court will revisit this question at summary judgment, when it will, presumably, have the audit letter before it along with other relevant evidence.  If the Court determines that the audit letter *did* commence the limitations period, it will then consider

1   whether the period is extended, anyway, because Plaintiffs' complaint contains allegations

2   of concealment, as well as whether there is any merit to Plaintiffs' argument that the

3   difference between the 419A(f)(6) plans and the 419(e) plan gets them around any kind of

4   statute of limitations problem.[1]

5   **III.    Fiduciary Status of Defendants**

6          The Court previously found that Plaintiffs failed to plead sufficient facts allowing for

7   the reasonable inference that Defendants are ERISA fiduciaries, which was fatal to their

8   ERISA-based claims.  The question now is whether Plaintiffs' amended complaint does any

9   better.

10          The substantive law hasn't changed since the Court first considered Plaintiffs'

11   complaint.  There are three ways in which one can acquire fiduciary status under ERISA, and

12   they are set forth by statute:

13                  (I) exercising discretionary authority or control over the
                    management of a plan or disposition of its assets (ii) rendering
14                  investment advice for a fee or other compensation, or (iii)
                    exercising discretionary authority over the administration of a
15                  plan.

16   29 U.S.C. § 1002(21)(A).  This definition of a fiduciary is therefore functional, *see Mertens*

17   *v. Hewitt Assocs.*, 508 U.S. 248, 262 (1993), and courts have said it should be construed

18   liberally.  *Thomas, Head & Geirsen Employees Trust v. Buster*, 24 F.3d 1114, 1117 (9th Cir.

19   1994).  Plaintiffs argue that Defendants are ERISA fiduciaries under (ii) above: "Plaintiffs'

20   entire allegation of ERISA fiduciary status is based on Defendants rendering investment

21   advice for a fee or other compensation."  (Doc. No. 75, p. 7.)

22          When the Court first considered the fiduciary status of Defendants and dismissed

23   Plaintiffs' ERISA claims, it analyzed Lincoln, Principal, and Conseco separately from

24   Anderson.   That's not appropriate this time around, because Plaintiffs assert in their

25   amended complaint that "Lincoln, Conseco, and Principal's ERISA fiduciary status is

26   _____

27          [1] The Court considered this latter argument when it granted Defendants' initial motion
     to dismiss and found it to be utterly incoherent, which was the main reason it found that
     Plaintiffs' ERISA claims were time-barred.  (*See* Doc. No. 56, pp. 5–8.)  Now, Plaintiffs have
28   shoved that argument to the side and rely instead on the argument that the audit letter was
     merely announcing a "routine" procedure with no certain outcome.

1   established by the actions of Anderson and Niche as agents for Lincoln, Conseco, and

2   Principal."[2]  (FAC ¶ 37.) In other words, only the actions of Anderson and Niche matter; if

3   they aren't fiduciaries — if they didn't render investment advice for a fee — neither are the

4   insurance companies.   The matter of Defendants' fiduciary status comes down to two

5   questions, then.  First, did Anderson and Niche render investment advice for a fee?  If they

6   didn't, the ERISA claims fail against all Defendants, and if they did, *at least* Anderson and

7   Niche are fiduciaries.   But there is also a follow-up question — the second of the two

8   questions just alluded to — with respect to Lincoln, Principal, and Conseco: Is it accurate to

9   describe Anderson and Niche as their *agents*?  If so, they too are fiduciaries.

10          **A.      Rendering Investment Advice For A Fee**

11          To establish that Anderson and Niche rendered investment advice for a fee, Plaintiffs

12   rely heavily upon *Buster*.  They even cite the case in their complaint.  (FAC ¶ 44.)  *Buster*

13   is indeed a helpful case.  It addressed the question whether a real estate broker (Buster

14   himself) who sold deed of trust notes to an employee trust fund subject to ERISA (the

15   Thomas, Head & Greisen Employees Trust) was a fiduciary of that trust fund.  After a bench

16   trial, the district court found that he was, and the Ninth Circuit affirmed.  *Buster* is particularly

17   apt to this case because Buster was found to be a fiduciary on the ground that he provided

18   investment advice for a fee, which is, of course, the ground on which Plaintiffs argue

19   Defendants are fiduciaries.  The Ninth Circuit highlighted five factual findings of the district

20   court that supported its determination:

21                  The district court made factual findings to support its conclusion
                    that Buster was a fiduciary within the meaning of ERISA.
22                  Specifically,   the   Court   found   that:   (1)   Buster   provided

23   _____

24          [2] It's useful to understand the basis for this argument.  "The majority of courts that
     have considered the status of benefit plan insurers have found insurance companies not to
25   be ERISA fiduciaries unless they are given the discretion to manage plan assets or to
     determine claims made against the plan." *Kyle Railways, Inc. v. Pacific Admin. Servs., Inc.*,
26   990 F.2d 513, 517 (9th Cir. 1993).  The Court cited *Kyle Railways* previously, in dismissing
     Plaintiffs' ERISA claims, and it also relied upon *Cotton v. Mass. Mutual Life Ins. Co.*, 402
27   F.3d 1267.  In *Cotton*, the Eleventh Circuit held that a life insurer that merely issued a policy
     to fund a plan was not an ERISA fiduciary.  *Kyle* and *Cotton* would appear to present a
28   substantial hurdle for Plaintiffs' ERISA claims.  How do they clear it?  By asserting that
     "Lincoln, Conseco, and Principal's ERISA fiduciary status is established by the actions of
     Anderson and Niche as agents for Lincoln, Conseco, and Principal."  (FAC ¶ 37.)

individualized investment advice; (2) the advice was given pursuant to a mutual understanding; (3) the advice was provided on a regular basis; (4) the advice pertained to the value of the property or consisted of recommendations as to the advisability of investing in certain property; and (5) the advice was rendered for a fee.

*Id.* at 1118. The Ninth Circuit also explained that "[a]ll five factors are necessary to support a finding of fiduciary status," which elevates them to the status of a test for acquiring fiduciary status under ERISA on the ground that a party provides investment advice for a fee. *See* 29 U.S.C. § 1002(21)(A)(ii). That is a sensible read of *Buster*, although the Court proceeds with some caution given that the Ninth Circuit did *not* say that the five factors are "*sufficient* to support a finding of fiduciary status." *But see Omni Home Financing, Inc. v. Hartford Life and Annuity Ins. Co.*, No. 06-CV-921, 2008 WL 1925248 at *6 (S.D. Cal. Apr. 29, 2008) (referring to "the *Buster* test").

Only two of the five *Buster* elements are at issue here: whether Anderson and Niche provided investment advice on a regular basis and whether they provided it for a fee. Defendants also question whether investment advice was given pursuant to a mutual understanding, but this appears almost as an afterthought in their reply brief; it doesn't even receive a separate discussion. (*See* Doc. No. 76, p. 4.)

### 1.    Regularity

"A finding that the investment advisor rendered advice on a 'regular basis' is essential to a determination that a fiduciary relationship existed." *Buster*, 24 F.3d at 1119. The case law is clear that regular means *regular*. Advising plaintiffs how to fund a plan merely at the plan's outset doesn't satisfy the regularity requirement. *Omni Home*, 2008 WL 1925248 at *6. Nor does urging plaintiffs to purchase certain financial products for a plan, and stopping there. *Am. Fed'n of Unions Local 102 Health & Welfare Fund v. Equitable Life Assurance Soc'y of the U.S.*, 841 F.2d 658, 664 (5th Cir. 1988). Actually giving advice to a plan, but on only one occasion, is insufficient. *Damasco & Assocs. 401(k) Profit Sharing Plan v. Manufacturers Life Ins.*, No. C 99-2135, 1999 WL 672322 at *6 (N.D. Cal. Aug. 20, 1999). As is giving advice on a few isolated occasions over a three or four-year period. *Schloegel v. Boswell*, 994 F.2d 266, 273 (5th Cir. 1993). *Buster* is an example of a different kind of

case: "regular meetings between Buster and the Trustees resulted in the purchase of 61 deed of trust notes . . . over a nine and one-half-year period." *Buster*, 24 F.3d at 1119–20.

Plaintiffs argue that their amended complaint alleges facts that make this case more like *Buster* than *Omni Home*, *Equitable Life*, *Damasco*, or *Schloegel*. They point specifically to the allegation that

> Niche, Anderson, Principal, Lincoln, and Conseco advised Mokhtari on separate occasions with regard to each of the five ERISA plans. The history of the adoption of the five ERISA plans spans four years, and the purchase of the life insurance policies were tailored during those years to meet the investment criteria for Mokhtari. In addition, there were other employees of Advanced Salon that Niche, Anderson, Principal, Lincoln, and Conseco provided insurance policies for over the course of the four years; therefore, the advice was provided to all five ERISA plans on a regular basis.

(FAC ¶ 41.) Plaintiffs' argument is that Anderson and Niche didn't simply tell them to purchase a life insurance policy for a plan and stop there. Rather, they advised Plaintiffs from one plan to the next, telling them which insurance policies to purchase along the way, over a period of several years.

It's possible to be even more specific. There were a total of five plans adopted by Mokhtari and Advanced Salon Visions. The first plan was adopted on January 1, 2000, and was funded by life insurance sold by Principal. (FAC ¶ 3(a).) The second plan was adopted on December 28, 2000, and was funded by life insurance sold by Lincoln and Conseco. (FAC ¶ 3(b).) The third plan was adopted on November 30, 2002, and, like the second plan, was funded by life insurance sold by Lincoln and Conseco. (FAC ¶ 3(c).) The third plan was a successor plan to the first and second plans. (FAC ¶¶ 3(c), 32.) The fourth plan was funded by life insurance policies sold by Conseco; Plaintiffs are unsure when it was adopted, but the policies were issued on March 16, 2000. (FAC ¶ 3(d).) Finally, the fifth plan was adopted on January 1, 2004, and was funded by life insurance sold by Lincoln. (FAC ¶ 3(e).) Mokhtari and his accountant terminated the third and fifth plans on October 6, 2005. (FAC ¶ 32.) The fourth plan, Plaintiffs say, was terminated sometime after January 1, 2005. (FAC ¶ 32.)

//

Plaintiffs' argument that Anderson and Niche provided "regular" investment advice in the sense that they "provided ongoing advice about what life insurance policies would be appropriate investments for the ERISA plans" is flawed for a number of reasons. (Doc. No. 75, p. 8.) First, Plaintiffs' factual allegations overwhelming emphasize that Defendants promoted the plans and facilitated the sale of insurance policies to the plans, *not* that they provided investment advice to the plans once they were up and running. (*See* FAC ¶¶ 14, 17, 18, 20, 21, 23, 25, 26, and 27.) As this Court previously held in *Omni Home*, advice pertaining to the funding of a plan at the plan's outset isn't "regular advice" under *Buster*. *Omni Home*, 2008 WL 1925248 at \*6.

Second, it doesn't make a meaningful difference that Plaintiffs adopted multiple plans on the advice of the Defendants, and over the course of several years. This is because an ERISA fiduciary is a fiduciary of *a plan*. *See* 29 U.S.C. § 1109(a). Plaintiffs' allegation in their amended complaint that "Niche, Anderson, Principal, Lincoln, and Conseco advised Mokhtari on separate occasions with regard to each of the five ERISA plans" betrays this confusion. (*See* FAC ¶ 41.) It may be that Anderson and Niche were regularly in touch with Mokhtari about how various plans might benefit his business and his wealth, but that just makes them salesmen or brokers. There is not a single factual allegation in Plaintiffs' complaint to suggest that Anderson and Niche, once each individual plan was established, and once the life insurance to fund it was selected, gave any additional advice to the plans.

Third, the Court doesn't accept Plaintiffs' proposed excuse from pleading richer facts that they "have not had the benefit of depositions or written discovery to analyze the extent of the advice that Defendants gave to Plaintiffs." (*See* Doc. No. 75, p. 7.) A complaint will never survive a motion to dismiss on the simple ground that discovery will prove plaintiffs' claims are righteous. But even more to the point, if any party is in a position to know what advice Defendants gave to Plaintiffs, it is Plaintiffs.

Fourth, Plaintiffs present no case with facts similar to theirs in which the regularity requirement was satisfied. The one case they do rely on, *Buster*, is easily distinguishable. There was a single trust in *Buster* to which the defendant broker sold *61* deed of trust notes

over a nine-year period. *Buster*, 24 F.3d at 1119.  Here, as the Court has already explained, there is no allegation that Anderson or Niche did anything other than promote certain plans and pick an insurance policy to fund them at their inception.   The Plaintiffs' complaint confirms this explicitly: "During the telephone discussions and personal meetings, Niche and Anderson advised Mokhtari to adopt the Second Plan, Third Plan, Fourth Plan, and Fifth Plan." (FAC ¶ 24.)  The advice *to adopt* a plan, however, is categorically distinct from the investment advice rendered *to a plan* for purposes of satisfying the regularity requirement in *Buster.*  The portion of Plaintiffs' complaint that alleges regularity alleges it in very broad strokes; this is precisely the kind of "'naked assertion' devoid of 'further factual enhancement'" that cannot survive a motion to dismiss. *Ashcroft*, 129 S.Ct. at 1949.  For this and other reasons given above, the Court finds that Plaintiffs have not pled sufficient facts to establish that Anderson and Niche rendered *regular* investment advice.  While this is enough to dispose of Plaintiffs' fiduciary duty claims, the Court will complement its analysis by going on to discuss whether, under *Buster*, Niche and Anderson rendered investment advice *for a fee*.

### 2.   Fees

ERISA provides that a person is a fiduciary if "he renders investment advice for a fee or other compensation, direct or indirect." 29 U.S.C. § 1002(21)(A)(ii).  The fee has to come from the ERISA plan, though: a mere broker who receives a commission on products he sells to a plan doesn't qualify as a fiduciary. *Equitable Life*, 841 F.2d at 664.  *See also Damasco*, 1999 WL 672322 at *6 (fee paid by insurer to broker "does not constitute the 'fee' the ERISA statute contemplates for creating a fiduciary relationship between an investment advisor and an ERISA plan"); *Fink v. Union Cent. Life Ins. Co.*, 94 F.3d 489 (8th Cir. 1996) (insurance agent was salesperson earning commissions and not a fiduciary under ERISA); *Consolidated Beef Indus., Inc. v. New York Life Ins. Co.*, 949 F.2d 960, 965 (8th Cir. 1991) (same).  This is obviously a problem for Plaintiffs, and their way around it is to argue that it's unclear whether Anderson and Niche received their commissions from the *plans* or from the *defendant insurers* — an issue, they say, is "properly left for trial or a motion for summary

1  judgment where the facts as discovered during the discovery stage will be analyzed and

2  compared with case law." (Doc. No. 75, p. 9.)

3       This is a seemingly desperate move on the Plaintiffs' part, and the Court is not

4  persuaded by it. As with the nature and extent of the "investment advice" Plaintiffs received

5  from Anderson and Niche, the Court does not believe Plaintiffs need discovery to determine

6  whether the plans, or Lincoln, Principal, and Conseco, compensated Anderson and Niche.

7  If they cannot allege that *they* compensated Anderson and Niche, it's a near-certainty that

8  they didn't, and the insurers did.

9       Here's the real problem with the argument, however. In the portion of their complaint

10  devoted to establishing that Defendants are ERISA fiduciaries, Plaintiffs use noncommittal

11  language suggesting that *they* compensated Anderson and Niche for rendering investment

12  advice. For example: "Defendants Niche, Anderson, Principal, Lincoln, and Conseco

13  rendered investment advice to Advanced Salon for a fee or other compensation" (FAC ¶ 38);

14  "Niche, Anderson, Principal, Lincoln, and Conseco all received a fee for providing advice

15  regarding the sale of the life insurance policies and/or the sale of the life insurance policies

16  themselves" (FAC ¶ 43). But elsewhere in their complaint, plaintiffs are far more specific

17  about how payments were structured: "Plaintiffs are informed and believe that Niche and

18  Anderson received commissions from Principal, Lincoln, and Conseco from Advanced

19  Salon's purchase of the life insurance policies to fund each of the five ERISA plans;" (FAC

20  ¶ 26); "Plaintiffs are informed and believe that a very large percentage of first year premiums

21  paid on the life insurance policies sold to all five ERISA plans were received by Niche,

22  Anderson, Principal, Conseco, and Lincoln as compensation" (FAC ¶ 63). Plaintiffs have

23  even argued that their ERISA claims are not time-barred because "they are based not only

24  on the tax qualified status of ERISA plans, but also the fact that Defendants failed to inform

25  Plaintiffs of the commissions received on the sale of the life insurance policies." (Doc. No.

26  75, p. 12.)

27       In essence, Plaintiffs argue whatever is convenient, even if the result seems

28  duplicitous. If the point is to establish that Defendants are ERISA fiduciaries, Plaintiffs argue

that they received "fees" for rendering investment advice, and that such fees possibly came from the ERISA plans themselves, but that discovery is required to confirm this. If the point is to prove their ERISA claims are timely, however, and that Defendants weren't as forthcoming in the promotion of the plans as they should have been, Plaintiffs argue that Anderson and Niche received commissions from Lincoln, Principal, and Conseco and were hush-hush about it. The Court can't see how both allegations can be true, and is inclined to believe the latter is more sincere. The "fees" received by Anderson and Niche were commissions paid by the insurer defendants, and under *Equitable Life*, *Damasco*, *Fink*, and *Consolidated Beef*, they are not the kind of "fees" contemplated by ERISA that give rise to a fiduciary relationship.

It's worth noting that the defendant in *Buster* was found to be a fiduciary even though his fees were earned in the form of a "commission," but the arrangement wasn't anything like it is in this case. Buster "purchased various deed of trust notes, and subsequently resold them to the Trust at a higher price." *Buster*, 24 F.3d at 1120. Thus, the court explained, "Buster's compensation amounted to the difference between the amount at which he purchased the deed of trust notes, and the price at which we was able to resell them to the Trust." *Id.* Buster's fees came directly from the ERISA plaintiff, then, not, as here, from some third party whose products were sold to the ERISA plaintiff.

The Court finds Plaintiffs have failed to plead sufficient facts to show that Defendants rendered investment advice *for a fee*, as ERISA and the case law contemplate that phrase. They are therefore unable to establish the Defendants are ERISA fiduciaries. There is no need to continue with the analysis and determine whether Plaintiffs have pled sufficient facts to show that Niche and Anderson operated as agents for the insurer defendants Lincoln, Principal, and Conseco.

**B.    Other ERISA Claims**

Plaintiffs' assert two claims under ERISA. The first is for "Rescission of Transactions and Restitution of Amounts Paid" under 29 U.S.C. § 1132(a)(2)–(3) and 29 U.S.C. § 1109. (FAC ¶¶ 45–70.) The second is for "Breach of Fiduciary and Co-Fiduciary Duty, Fraud, and

1   Misrepresentation under ERISA" under 29 U.S.C. § 1104(a), 29 U.S.C. § 1105(a), 29 U.S.C.

2   § 1106(a), 29 U.S.C. § 1109(a), and 29 U.S.C. § 1132(a)(2)–(3).  (FAC ¶¶ 71–83.)

3       The Court's discussion above is certainly sufficient to dismiss Plaintiffs' claims for

4   breach of fiduciary and co-fiduciary duty.  Because they have failed to plead facts to show

5   that Defendants are ERISA fiduciaries in the first instance, those claims can't stand.  But

6   what about Plaintiffs' claim for rescission and restitution, as well as Plaintiffs' claim for fraud

7   and misrepresentation that is coupled with its breach of fiduciary duty claim?  The question

8   is a critical one because if the Plaintiffs' failure to plead facts showing that Defendants are

9   ERISA fiduciaries is fatal to *all* ERISA claims, then only state claims remain and the Court's

10   continuing jurisdiction over this case is in jeopardy.

11       It is clear from Plaintiffs' complaint that their rescission and restitution claim under

12   ERISA presumes a fiduciary relationship between Plaintiffs and Defendants.  Paragraph 48

13   of the complaint alleges "Plaintiffs are informed and believe that Niche, Anderson, Principal,

14   Lincoln, and Conseco engaged in prohibited transactions which is a breach of fiduciary duty

15   under ERISA § 406 and is a violation of ERISA."  (FAC ¶ 48.)  Paragraph 55 alleges "Niche,

16   Anderson, Principal, Conseco, and Lincoln acted negligently with respect to breaching their

17   fiduciary duties to Plaintiffs."  (FAC ¶ 55.)  Paragraph 56 alleges, "As ERISA fiduciaries,

18   Defendants Niche, Anderson, Principal, Conseco, and Lincoln owed fiduciary duties to

19   Mokhtari to not mislead Plaintiffs concerning the tax deductibility of the contributions used

20   to purchase life insurance policies for all five ERISA plans."  (FAC ¶ 56.)  It follows from this

21   that, given the Court's conclusion with respect to Defendants' fiduciary status, Plaintiffs

22   cannot state a claim for rescission and restitution under ERISA.

23       Likewise, Plaintiffs' fraud claim under ERISA, to the extent it is analytically distinct

24   from the breach of fiduciary duty claim (and it may not be), also presumes a fiduciary

25   relationship between Plaintiffs and Defendants.  The explanation is straightforward.  Plaintiffs

26   cite a single sequence of ERISA provisions for both their breach of fiduciary duty claim and

27   their fraud and misrepresentation claim, and those provisions all fall under a part of ERISA

28   devoted to "Fiduciary Responsibility."

The Court's conclusions with respect to Defendants' fiduciary status are therefore fatal to all of Plaintiffs' ERISA claims.  The Court needn't consider whether Defendants breached any prohibited transaction rules, or whether Plaintiffs' fraud allegations under ERISA satisfy the particularly requirement of Rule 9(b) of the Federal Rules of Civil Procedure.

## IV.    Jurisdiction

When the Court first dismissed Plaintiffs' complaint, it noted that their state law claims are supplemental under 28 U.S.C. § 1367, and that the general rule is that "if the federal claims are dismissed before trial . . . the state claims should be dismissed as well." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 ((1966)).  But that is just the general rule.  The Supreme Court in *Carnegie-Mellon* also recognized that this is not "a mandatory rule to be applied inflexibly in all cases."  *Carnegie-Mellon*, 484 U.S. at 350 n.7.  Ultimately, it is a matter left to the Court's discretion.  *Noyes v. Kelly Svcs.*, 488 F.3d 1163, 1173 (9th Cir. 2007).  *See also* 28 U.S.C. § 1367(c).  The Court will hold on to this case and consider Plaintiffs' state law claims.  They raise important questions of preemption that have come up before and will come up again, and the Court has invested too much in this case, anyway, to remand it to state court at this point.

## V.    State Law Claims

The first question to tackle is whether Plaintiffs' state law claims are preempted by ERISA.

### A.    Preemption

The relevant law on preemption has not changed since the Court first rejected Plaintiffs' complaint, as explained below in an excerpt from the Court's earlier order.

ERISA "supersedes any and all State laws insofar as they may now or hereafter relate to any employee benefit plan . . . ." 29 U.S.C. § 1144(a).  The Ninth Circuit has considered this language and concluded that "Congress included within ERISA one of the broadest preemption clauses ever enacted by Congress."  *San Francisco Culinary, Bartenders and*

1    *Service Employees Welfare Fund v. Lucin*, 76 F.3d 295, 298 (9th Cir. 1996) (internal

2    quotations omitted).  The Supreme Court has similarly held that ERISA "comprehensively

3    regulates" employee benefit plans, *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 44 (1987),

4    and "includes expansive pre-emption provisions," *Aetna Health Inc. v. Davila*, 542 U.S. 200,

5    208 (2004) (citing 29 U.S.C. § 1144 specifically).  District courts in this Circuit have certainly

6    gotten the message.  *See Hyder v. Kemper Nat'l Services*, 390 F.Supp.2d 915, 918 (N.D.

7    Cal. 2005) ("Extensive case law establishes that the scope of ERISA preemption is

8    extremely broad.").

9       For the purposes of applying the preemption provision in 29 U.S.C. § 1144(a), "[a] law

10   'relates' to an employee benefit plan, in the normal sense of the phrase, if it has a

11   connection with or reference to such plan."  *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96-97

12   (1983).  In *Shaw*, for example, the Supreme Court held that New York's Human Rights Law

13   and Disability Benefits Law "related to" an employee benefit plan.  *Id.* at 100.  The Human

14   Rights Law prohibited employers from structuring their employee benefit plans "in a manner

15   that discriminates on the basis of pregnancy," and the Disability Benefits Law required them

16   to pay employees specific benefits.  *Id.* at 97.  This case isn't so straightforward.  Indeed, it

17   is telling that Defendants argue that Plaintiffs' *claims* are preempted by ERISA, rather than

18   the *laws* upon which those claims are based.<sup>3</sup>  On their face, those laws, unlike the

19   preempted laws in *Shaw*, have no relation whatsoever to employee benefit plans.  They just

20   happen to be the basis for alleged torts in an ERISA case.

21       Preemption may still be in the cards, however.  Adhering to the relatedness standard

22   announced in *Shaw*, the Ninth Circuit has explained that a state law claim has "reference to"

23   an ERISA plan if it is "premised on the existence" of one, or if the existence of the ERISA

24   plan "is essential to the claim's survival."  *Providence Health Plan v. McDowell*, 385 F.3d

25   1168, 1172 (9th Cir. 2004).  To determine whether a claim has a "connection with" an

26   employee benefit plan, courts in the Ninth Circuit use a "relationship test."  *Id.*  "Specifically,

27

28      [3] Not only does ERISA's preemption provision speak of "State laws," but ERISA defines "State law" as "all laws, decisions, rules, regulations, or other State action having the effect of law, of any State."  29 U.S.C. § 1144(c)(1).

the emphasis is on the genuine impact that the action has on a relationship governed by ERISA, such as the relationship between a plan and a plan participant." *Id*. Or, as this Court has explained before, "a state law claim has a connection with an ERISA plan if the state claim encroaches upon relationships regulated by ERISA, such as the relationship between plan and plan member, plan and employer, and plan and trustee." *Chasan v. The Garrett Group*, No. 06 CV 1090, 2007 WL 173927 at *7 (S.D. Cal. Jan. 18, 2007).

### 1.    Preemption of Fraud Claims

Defendants argue that Plaintiffs' first two state law claims — one for "Pre-Plan Negligent Misrepresentation" and another for "Pre-Plan Fraud, Deceit, Concealment, and Misrepresentation" — are preempted based on this Court's previous holding in *Chasan*. It is true that *Chasan* is an almost identical case (brought by Plaintiffs' counsel) in which the Court found that "Plaintiff's state law claims for pre-plan fraud and negligent misrepresentation are so intertwined with Plaintiff's ERISA claims that preemption is required." *Id.* at *8. But there is big difference between *Chasan* and this case. In *Chasan* and the case on which it relied, *Farr v. U.S. West Commc'ns, Inc.*, 151 F.3d 908 (9th Cir. 1998), the plaintiffs' state law claims were preempted largely because they were able to state claims for relief under ERISA instead. The plaintiffs in *Farr* succeeding in establishing that the defendants — their former employer, not a promoter of ERISA plans or insurance policies — owed to them and breached a fiduciary duty when it gave misleading advice about the tax consequences of an early retirement option that allowed them to receive their accrued pension benefits (from a preexisting plan, no less) in one lump sum. *Farr*, 151 F.3d at 911. Those facts aren't analogous to the operative facts in this case. In *Chasan*, as well, this Court was moved by the observation that "this is not a situation where, absent the state law claim, the [plaintiff is] without any remedy to redress the wrongful conduct which caused [his] damages." *Chasan*, 2007 WL 173927 at *8 (quoting *Camp v. Pacific Financial Group*, 956 F.Supp. 1541, 1547–48 (C.D. Cal. 1997)). The plaintiff in *Chasan* pleaded two ERISA claims, which the defendant did not move to dismiss.

//

*Omni* is the better case to follow here on the question whether Plaintiffs' state law claims are preempted by ERISA.  (The *Omni* decision cited above was a summary judgment order; here the Court focuses on the Court's order on the defendants' motion to dismiss.) *Omni* presents a set of facts, like those in *Chasan*, that are nearly identical to the facts in this case: "The gravamen of both [state] causes of action is that defendants lured plaintiffs into contributing 'huge sums' by sundry misrepresentations and concealments regarding the insurance policies and the Plan that those sums purchased and funded."  *Omni*, No. 06-CV-921, Doc. No. 46, p. 9.  Then, on the preemption question, this Court noted, "Many of the federal circuit courts of appeals have recognized that ERISA does not preempt a state law claim for fraud in the inducement to enter an ERISA plan."  *Id.*  It relied on *Camp*, which it described as "thoroughly analyzing the opinions of the Fourth, Fifth, Sixth, and Eleventh Circuits, and predicting that the Ninth Circuit would recognize this claim if it were presented with such a case."  *Id.  Omni* aligns perfectly with the facts of this case — better, even, than *Chasan* does — and there is no reason for the Court to depart from its reasoning here.

There is a final observation worth making here, which is that Defendants are making two arguments that can't both be true: one, that Plaintiffs can't bring claims under ERISA because the Defendants aren't ERISA fiduciaries, and two, that Plaintiffs can't bring claims under state law because ERISA preempts those claims.  There must be some route for relief open to parties in the Plaintiffs' position, who feel they have been duped into establishing or contributing to benefit plans that turn out not to be so beneficial.  Thus, the Court declines to find that Plaintiffs' misrepresentation and fraud claims — their third and fourth causes of action — are preempted by ERISA.

### 2.     Preemption of Fiduciary Duty Claims

There is no reason to treat Plaintiffs' fiduciary duty claims any differently, for preemption purposes, than their misrepresentation and fraud claims.   The Court declines to find that they are preempted by ERISA.

//

//

### 3.      Preemption of Rescission Claims

Plaintiffs' first cause of action, brought under ERISA, is for "Rescission and Unwinding of the Transactions and Restoration of All Amounts Paid by Plaintiffs to Defendants."  (FAC ¶¶ 45–70.)  The Court has already determined that none of Plaintiffs' ERISA claims survive Defendants' motion to dismiss, but Plaintiffs note in their complaint,

> if Plaintiffs are unable to prove that ERISA properly applies to the misrepresentations regarding the tax consequences of the purchase of the policies and the failures to inform Plaintiffs concerning the commissions, based on the allegations contained in the First Amended Complaint, Plaintiffs request pursuant to state law that the Defendants must rescind the contracts and unwind the sale of the life insurance policies.

(FAC ¶ 64.)  Plaintiffs concede, however, that the statutory bases they cite for rescission under state law — California Insurance Code §§ 331, 359, and 359, and California Civil Code § 1689(b)(7) — are inadequate in this case.  *See Security Life Ins. Co. of Am. v. Meyling*, 146 F.3d 1184, 1187–88 (9th Cir. 1998) (finding that ERISA preempts rescission pursuant to sections 331 and 359 of the California Insurance Code); *Century Sur. Co. v. Crosby Ins., Inc.*, 124 Cal.App.4th 116, 126 (2004) (explaining that section 338 provides a remedy for insurers, not insureds); and *Omni,* No. 06-CV-921, Doc. No. 46, p. 7 (discussing rescission pursuant to section 1689(b)(7) of the California Civil Code).  Seeing as though Plaintiffs cite no other statutory basis for rescission, their claims for rescission under California law must be dismissed.

### B.      Fraud-Based Claims

### 1.      Timeliness of Fraud-Based Claims

The Court has found that Plaintiffs' ERISA claims aren't time barred simply by virtue of the October 7, 2005 audit letter from the IRS.  It doesn't naturally follow that Plaintiffs' fraud-based claims for negligent misrepresentation and pre-plan fraud  under state law are timely — the statutes of limitations are different — but the Court finds that they are.  Under California law, a cause of action for fraud doesn't accrue "until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake."  Cal. Code Civ. Proc. § 338(d).  This statute of limitations doesn't call for a different analysis, in the Court's view,

than ERISA's.  The audit letter certainly put Plaintiffs on notice that the plans might not have the tax virtues Plaintiffs were led to believe, but the letter alone — which, again, is not a part of the record for the Court to review — isn't even alleged to have contained the facts constituting the fraud, particularly the damages suffered.  *See Engalla v. Permanente Med. Group, Inc.*, 15 Cal.4th 951, 974 (1997) (listing elements of fraud).

Claims for negligent misrepresentation must be brought within two years of "the discovery of the loss or damage suffered by the aggrieved party thereunder."  Cal. Code Civ. Proc. § 339(1).  Here again, the audit letter did not inform Plaintiffs of the amount of any loss, or that there would necessarily *be* a loss; it just informed the Plaintiffs that the plans were being audited.

### 2.    Whether Plaintiffs Have Pled Fraud with Particularity

Rule 9(b) of the Federal Rules of Civil Procedure requires that a party alleging fraud "must state with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b). Defendants argue that Plaintiffs have failed this requirement, and that "Rule 9(b) mandates dismissal of Plaintiffs' specific fraud-based claims (Claims 3 and 4)."  (Doc. No. 74-1, p. 9.)

Defendants rely on a Ninth Circuit case, *Schreiber Distrib. Co. v. Serv-Well Furniture Co., Inc.*, 806 F.2d 1393 (9th Cir. 1986) in which the court noted, "We have interpreted Rule 9(b) to mean that the pleader must state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation."  *Id.* at 1401. This understanding of Rule 9(b) was reiterated in *In re Glen Fed, Inc. Sec. Litig.*, 42 F.3d 1541 (9th Cir. 1994); the court explained that Rule 9(b) requires the pleading of "evidentiary" facts: "time, place, persons, statements made, explanation of why or how such statements are false or misleading."  *Id.* at 1548 n.7.

Plaintiffs' allegations of fraud may not include the precise dates on which the allegedly fraudulent statements were made, or a verbatim recitation of what those statements were, but neither are they, as Defendants argue, "conclusory allegations of deceptive behavior." (Doc. No. 74-1, p. 8.)  *Schreiber* itself explains that Rule 9(b) "requires the identification of the circumstances constituting fraud so that the defendant can prepare an adequate answer

from the allegations," and certainly Plaintiffs have pleaded sufficient facts to enable Defendants to do that. *Schreiber*, 806 F.2d at 1401. The plaintiff in *Schreiber* devoted a single, conclusory paragraph in its complaint to allegations of mail and wire fraud, and "the allegations describing the operative events failed to mention any use of the mails or telephones." *Id.* Plaintiffs have done a much better job pleading fraud. They allege, with sufficient detail, that Anderson and Carsrud represented to Mokhtari, both orally and in writing, that there were tax advantages to the plans (*see, e.g.,* FAC ¶¶ 14, 15, 18, 19, 21, and 22) and those representations turned out to be false (*see, e.g.,* FAC ¶¶ 18, 33, 34). Defendants know exactly what Plaintiffs are talking about when they talk about fraud, and that is the best indication that Plaintiffs have sufficiently alleged the who, what, when, where, and how of the alleged misconduct. *See Kearns v. Ford Motor Co.*, 567 F.3d 1120 (9th Cir. 2009) ("Rule 9(b) demands that the circumstances constituting the alleged fraud be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong."). The Court finds that Plaintiffs have pled fraud with sufficient particularity. Their negligent misrepresentation and pre-plan fraud claims survive Defendants' motion to dismiss.

### C.    Breach of Fiduciary Duty

The Court has already determined that Plaintiffs failed to plead adequate facts to establish — and likely cannot establish — that Defendants are fiduciaries under ERISA. But whether they are fiduciaries under the common law is a different matter. This is because ERISA and the common law define fiduciary differently. "Unlike the common law definition, under which fiduciary status is determined by virtue of the position a person holds, ERISA's definition is functional." *Lopresti v. Terwilliger*, 126 F.3d 34, 40 (2nd Cir. 1997) (citations omitted). Accordingly, the definition of an ERISA fiduciary is broader than the common law definition. *Smith v. Provident Bank*, 170 F.3d 609, 613 (6th Cir. 1999).

The Court looks to California law for the common law definition of a fiduciary. *Bass v. First Pac. Networks, Inc.*, 219 F.3d 1052, 1055 n.2 (9th Cir. 2000) (law of forum state applies to claims over which federal court has supplemental jurisdiction). In California, "[a]

fiduciary or confidential relationship can arise when confidence is reposed by persons in the integrity of others, and if the latter voluntarily accepts or assumes to accept the confidence." *Pierce v. Lyman*, 1 Cal.App.4th 1093, 1101–02 (1991).   That is a relatively standard formulation.   *See Dairy Farmers of Am., Inc. v. Travelers Ins. Co.*, 292 F.3d 567 (8th Cir. 2002) (fiduciary relationship deemed to exist in Missouri when "a special confidence is reposed in one who in equity and good conscience is bound to act in good faith, and with due regard to the interests of the one reposing the confidence").

Defendants argue that they are not fiduciaries because under California law insurers and insurance brokers *can't* be.   *See Vu v. Prudential Property and Casualty Ins. Co.*, 26 Cal. 4th 1142, 1150–51 (2001) (insurer-insured relationship is not a "true" fiduciary relationship); *Hydro-Mill v. Hayward, Tilton & Rolaap*, 115 Cal.App.4th 1145, 1158 (2004) ("If an insurer is not a fiduciary, then arguably, neither is a broker").   The Court wonders whether *Vu* is even relevant.   As discussed above, Plaintiffs argued that the insurer defendants were *ERISA* fiduciaries not in and of themselves, but through the actions of their alleged agents Anderson and Niche, the real fiduciaries.   The logic appears to be the same with respect to the charge that Defendants breached a common law fiduciary duty.   It all depends on the actions and fiduciary status of Anderson and Niche. Responding to Defendants' argument that insurers can't be fiduciaries under California law, Plaintiffs argue,

> In the present case, the FAC alleges that Defendants advised Plaintiffs to enter into the ERISA plans and specifically tailored the life insurance policies for the particular circumstances of plaintiffs.   Niche and Anderson, acting as agents for the Insurer Defendants, held themselves out as having special knowledge with respect to ERISA plans and the funding of ERISA plans with life insurance policies.

(Doc. No. 75, p. 19.)   So, the operative question is whether Anderson and Niche are common law fiduciaries of Plaintiffs.   *Hyrdo-Mill*, to be clear, doesn't state, categorically, that insurance brokers aren't or can't be fiduciaries.   The decision even notes that if they're *agents* of the insureds, they can be fiduciaries. *Hydro-Mill*, 115 Cal.App.4th at 1158.   *See also Chao v. Day*, 436 F.3d 234, 237 (insurance agent or broker who is employed by the insured to act as its agent has fiduciary obligations).   In *Chao*, the defendant accepted

hundreds of thousands of dollars from twenty-nine ERISA plans, with instructions to buy insurance policies for them, and, instead, he kept the money for himself and provided the plans with fake policies. *Id.* at 235.

But Plaintiffs don't allege that Anderson and Niche were employed by the plans to procure insurance policies that would fund them, nor do they allege that Anderson and Niche were agents of the plans. They allege only that Anderson and Niche provided customized advice about which types of plans would be best for Plaintiffs, and that Anderson and Niche actually sold them those plans. The Court finds those allegations are insufficient — not only under *Hydro-Mill* and *Chao*, but also the common law definition of a fiduciary — to establish a fiduciary relationship. Plaintiffs common law fiduciary duty claims are therefore dismissed.

## VI.   Summary of Analysis

In sum, the Court concludes:

First, although Plaintiffs' ERISA claims are timely, Plaintiffs have failed to plead sufficient facts to show that Defendants are fiduciaries under ERISA. For this reason, their ERISA claims are **DISMISSED**, this time with prejudice.

Second, Plaintiffs have also failed to plead sufficient facts to show that Defendants are fiduciaries under common law. Their claims for breach of common law fiduciary duty are therefore **DISMISSED** with prejudice.

Third, Plaintiffs cannot state a claim for rescission. Their claim for rescission under ERISA fails along with their other ERISA claims, and their claim under state law is preempted by ERISA. The rescission claims are **DISMISSED** with prejudice.

Fourth, Plaintiffs fraud-based claims — the first for negligent misrepresentation and the second for pre-plan fraud and deceit — are timely, are not preempted by ERISA, and do allege fraud with adequate particularity. Defendants' motion to reject those claims is **DENIED**.

Thus, as in *Cotton*, "reduced to the size of a pea, this case is really about claims of fraud and misrepresentation in the sale of some life insurance policies." *Cotton*, 402 F.3d

//

1    at 1279. That's it. The ERISA claims, and the fiduciary duty claims under common law, are

2    an utter distraction, and they complicate this case unnecessarily.

3    **VII.    Agent Status of Niche and Anderson**

4         Although Defendants raise this point but never hit it right on the head, the Court is

5    concerned about the extent to which Plaintiffs are bringing the insurer defendants into this

6    case on the ground that Anderson and Niche were their agents. That was explicitly Plaintiffs'

7    basis for alleging that the insurer defendants are fiduciaries under ERISA, but, unless the

8    Court is missing something, it must also be the basis on which Plaintiffs believe the insurer

9    defendants committed fraud. But there are few factual allegations that cut straight to the

10   relationship between Anderson and Niche, on one hand, and Lincoln, Principal, and

11   Conseco, on the other. (*See* FAC ¶ 8, 9, 20, 21, 23, 25, 26, 27, 37.) It appears to be

12   Plaintiffs' position that an agency relationship follows naturally from the fact that Anderson

13   and Niche promoted and sold life insurance plans provided by the insurer defendants.

14        Agency is a legal concept. The Restatement (Third) of Agency defines agency as:

15              . . . the fiduciary relationship that arises when one person (a
                "principal") manifests assent to another person (an "agent") that
16              the agent shall act on the principal's behalf and subject to the
                principal's control, and the agent manifests assent or otherwise
17              consents so to act.

18   RESTATEMENT (THIRD) OF AGENCY § 1.01 (2006). Thus, to establish that Anderson and Niche

19   were agents of Lincoln, Conseco, and Principal, Plaintiffs must point to: (1) a manifestation

20   by Lincoln, Conseco, and Principal that Anderson and Niche shall act on their behalf; (2)

21   Anderson's and Niche's acceptance of the undertaking; and (3) an understanding that

22   Lincoln, Conseco, and Principal are ultimately in control of Anderson's and Niche's actions.

23   *Bowoto v. Chevron Texaco Corp.*, 312 F.Supp.2d 1229, 1239 (N.D. Cal. 2004). "[T]he key

24   elements of agency are the principal's consent to be represented by the agent and the

25   degree of control that the principal exercises over the agent's actions." *Wells Fargo Bank,*

26   *N.A. v. Ash Org.*, No. CV-09-188, 2009 WL 4884467 at *6 (D. Or. Dec. 8, 2009). *See also*

27   *Qwest Commc'n v. Herakles, LLC*, No. 07-CV-393, 2008 WL 3864620 at *4 (E.D. Cal. Aug.

28   //

19, 2008) (identifying chief characteristics of an agency relationship as agent's authority to act on principal's behalf *and* degree of control exercised by principal over agent's activities).

"When a plaintiff alleges that a defendant is liable for intentional misrepresentation under either an agency or civil conspiracy theory, Rule 9(b) requires that the plaintiff allege with particularity facts that support the existence of an agency relationship or civil conspiracy." *Palomares v. Bear Stearns Residential Mortg. Corp.*, 2008 WL 686683 at *4 (S.D. Cal. Mar. 13, 2008) (citing *Swartz v. KMPG, LLP*, 476 F.3d 756, 764–65 (9th Cir. 2007)). While the Court has its doubts that Plaintiff has met this standard with respect to the agency relationship between Anderson and Nice *and* the insurer defendants, it does find that they have pled sufficient facts to survive a motion to dismiss. However, Plaintiffs are now on notice that absent firmer evidence at the summary judgment phase of this litigation that an actual agency relationship existed, the insurer defendants will be dismissed from this case.

## VIII.   Conclusion

Plaintiffs' claims for "Pre-Plan Negligent Misrepresentation" and "Pre-Plan Fraud and Deceit, Misrepresentation and Concealment" survive the motion to dismiss. Those are the claims that fit the alleged facts of this case. The same can't be said of Plaintiffs' ERISA and fiduciary duty claims, which are **DISMISSED** with prejudice. Plaintiffs' rescission claims are also **DISMISSED** with prejudice, though the Court will remain open to Plaintiffs seeking rescission as a form of equitable relief. Plaintiffs concede, after all, that they lack any statutory basis for seeking rescission. The Court warns the Plaintiffs again that the insurer defendants will be dismissed from this case absent richer factual proof that Anderson and Niche were acting as their agents when the alleged facts giving rise to this action transpired.

**IT IS SO ORDERED**.

DATED:  August 24, 2010

*Larry A. Burns*

**HONORABLE LARRY ALAN BURNS**
United States District Judge